HEANEY, Circuit Judge,
dissenting.
I respectfully dissent. The majority expands the component part supplier doctrine to shield from liability even those suppliers who knew how their product was going to be used and knew that the intended use posed grave danger to the ultimate consumers. I cannot accept such blanket protection for component part manufacturers.[1] In this *1060 case, I would permit the Recipients’ claims to go to a jury for a determination of what DuPont knew and whether it had a duty to prohibit the sale of Teflon for use in human implants, or at least to provide adequate warnings to Vitek of those known risks.
Underlying the component part supplier doctrine is the premise that the manufacturer of a finished product is generally in a better position to detect its potential dangers than the manufacturer of only a part of the product. Certainly, a finished product manufacturer is responsible for dangers that result from the product design or from the manner in which a component part is integrated into the finished product. As a corollary, manufacturers of a component part generally will not know about such dangers and should not be required to research every possible application of its nondefective, multi-use product. See Crossfield v. Quality Control Equip. Co., 1 F.3d 701, 705 (8th Cir.1993) (“ [M]anufacturers of component parts which are not defective standing alone cannot be hable for accidents taking place after the part has been integrated into a larger system which they played no part in building.”).
But the facts of this case place it outside the parameters of the general component part supplier doctrine. The Recipients have presented evidence sufficient for a jury to find that DuPont knew Vitek was going to use the Teflon in the TMJ implants. There[1] is also evidence that Dupont knew that Teflon, used in load-bearing human implants, no matter how the implants were designed, can disintegrate and cause injury to implant recipients. DuPont was aware of several studies demonstrating this precise risk. Moreover, a chemist who worked for DuPont for over thirty years testified that a known characteristic of all Teflon, including FEP film, is that it severely fragments after constant contact with and pressure from sharp edges. (Appellants’ App. at 370 (Tab 61) (Dep. of Dr. James Fang).)
This is not a case, as the majority contends, of an “erroneous decision to incorporate what turned out to be an unsuitable material.” Maj. Op., supra at 1057. Rather, the evidence suggests that DuPont was fully aware of the serious risk of harm Teflon posed when used in human implants. To hold DuPont responsible for these known risks would not require component part suppliers to research every possible application of its product; it recognizes DuPont’s actual knowledge, without any further research or speculation. Nor are the Recipients claiming that DuPont should have designed FEP film differently, as the majority suggests, but that if DuPont knew the film was inappropriate for use in human implants, it should not have continued to supply the film.
There is significant “social utility” in making DuPont accountable for what it knew and for its failure to prevent harm to the ultimate consumers. While Vitek may have been in the better position to evaluate the film’s safety for the particular use, DuPont’s position may well have been sufficient for it to have known of the harm Teflon posed in the human implants. It is my position that where the component part manufacturer knows that its product is going to be used in a particular fashion and knows that, no matter what the design, the product poses a danger to the ultimate consumer, it cannot escape from liability.

. I recognize that the majority is in company with several of our sister circuits in its expansive application of the component part supplier doctrine. I decline to follow that trend, however. This case is not controlled by any previous Eighth Circuit decision. Both Rynders v. E.I. *1060 DuPont, De Nemours & Co., 21 F.3d 835 (8th Cir.1994) and our summary affirmance of Hegna v. E.I. DuPont De Nemours & Co., 825 F.Supp. 880 (D.Minn.1993) aff'd, 27 F.3d 571 (8th Cir.1994) involved PTFE resin — the Teflon product that underwent substantial change after leaving DuPont's control — and not the FEP film, which allegedly remained unchanged in the TMJ implant. Moreover, in Rynders, the case was tried to a jury, 21 F.3d at 84, and in Hegna, summary judgment was premised on DuPont's warnings to Vitek, 825 F.Supp. at 884. Our court has not previously given an outright liability exemption to all manufacturers of component parts.